IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR FERNANDO GUTIERREZ,<br><br>Petitioner,<br><br>v.<br><br>HEIDI LACKNER, Warden,<br><br>Respondent. | Case No. 1:14-cv-01834 DAD MJS (HC)<br><br>**FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Heidi Lackner, warden of Sierra Conservation Center in Jamestown, California, is hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Daniel B. Bernstein of the office of the Attorney General.

**I.     Procedural Background**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Kern, following his conviction by jury trial on June 30, 2010, of attempted murder, first degree burglary,

possession of a firearm by a felon, receiving stolen property, and various enhancements. (Clerk's Tr. at 359-60.) On May 20, 2011, Petitioner was sentenced to a determinate term of twenty-six (26) years and eight months in prison, and an additional indeterminate term of twenty-five (25) years to life. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which, but for staying the sentence on the burglary conviction and fixing clerical errors, affirmed the judgment on January 8, 2013. (Lodged Docs. 1-4.) Petitioner sought review from the California Supreme Court. (Lodged Docs. 5-6.) The California Supreme Court denied review on April 17, 2013. (Id.)

Petitioner proceeded to file collateral challenges to his conviction in state court in the form of petitions for writ of habeas corpus. Petitioner filed a petition with the Kern County Superior Court. The court denied the petition in a reasoned opinion on July 14, 2014. (Lodged Docs. 7-8.) He then filed a petition for writ of habeas corpus with the Fifth District Court of Appeal. The court denied the petition in a summary decision on August 7, 2014. (Lodged Docs. 9-10.) Finally, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. The court denied the petition in a summary decision on November 12, 2014. (Lodged Docs. 11-12.)

On November 21, 2014 Petitioner filed the instant federal habeas petition. (Pet., ECF No. 1.) Petitioner presented two claims for relief in the petition, however the second claim included several different theories. Petitioner asserted: (1) that he was denied the right to present a complete defense based on the trial court's failure to instruct the jury on self-defense with regard to the criminal charge of possession of a firearm by a felon and; (2) that defense counsel provided ineffective assistance by (a) failing to refute the gunshot residue evidence, (b) failing to obtain phone records, and (c) failing to present a ballistics expert. (Id.)

Respondent filed an answer to the petition on January 30, 2015. (ECF No. 11.) Petitioner filed a reply on February 23, 2015. (ECF No. 13.) The matter stands ready for adjudication.

## II.     Statement of the Facts[1]

FACTUAL AND PROCEDURAL HISTORIES

On October 29, 2009, police received a report of a shooting at 2210 San Felice Way in Delano, the home of Brenda Cadiz and her husband Melecio Cadiz. Brenda's brother, Joejo Raquinio, lived with her. Officers found Brenda lying in a neighboring driveway with one gunshot wound to the head and three to the left arm. She and Raquinio told the officers that a man had come to the house saying he was seeking a job with Melecio. When he was told there were no jobs, he forced his way into the house, produced a gun, and shot Brenda repeatedly. Raquinio and the man struggled; the man hit Raquinio in the head with the gun, and Raquinio hit the man over the head with a vase. The man fled on foot. He had once worked for the family. Raquinio and Brenda knew him as Fernando.

Following a trail of drops of blood, the officers tracked Gutierrez to 2222 Ruffion Court, a block away, where they found him hiding in a shed, bleeding, in the back yard. With him in the shed were some pieces of jewelry and a glass smoking pipe. Brenda and her daughter, Kaelah Cadiz, identified Gutierrez as the man who had been at the house.

The officers took a set of car keys from Gutierrez. They found his car, which was parked a short distance from Brenda's house, and searched it pursuant to a warrant. Inside was a gym bag containing 100 to 150 pieces of jewelry and some baseball memorabilia. Some of the jewelry and the baseball memorabilia had been reported stolen from a home in Visalia. On the roof of the house at 2214 Ruffion Court, two houses south of the shed where Gutierrez was hiding, the officers found a .32-caliber revolver with four spent shell casings in the cylinder.

The district attorney filed an information charging Gutierrez with six counts: (1) attempted murder of Brenda (§§ 187, 664); (2) assault of Brenda with a firearm (§ 245, subd. (a)(2)); (3) first degree burglary (§ 460, subd. (a)); (4) being a felon in possession of a firearm (former § 12021, subd. (a)(1));[fn2] (5) receiving stolen property (§ 496, subd. (a)); and (6) assault of Raquinio with a firearm (§ 245, subd. (a)(2)). For sentence-enhancement purposes, the information alleged that Gutierrez used a firearm in committing the offenses in counts 1, 2 and 6. (§§ 12022.5, subd. (a)(1); 12022.53, subd. (d).) The information also alleged that Gutierrez had one prior strike conviction for purposes of the Three Strikes Law (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)) and four prior convictions resulting in prison terms (§ 667.5, subd. (b)).

**FN2**: This statute now appears at section 29800, subdivision (a).

Gutierrez testified at trial, contradicting the account given by the victims. In his version, he was a methamphetamine dealer and Melecio Cadiz was his supplier. In the past, Melecio had accepted payment for methamphetamine in the form of jewelry and electronic devices. Sometimes Brenda chose the pieces.

---

[1] The Fifth District Court of Appeal's summary of the facts in its January 8, 2013 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

>     Gutierrez came to the Cadizes' house on October 29, 2009, to show Brenda jewelry. They sat in her car and smoked some methamphetamine, and then went in the house to look at the jewelry. Gutierrez set out some pieces on a coffee table in the living room while Brenda talked on the phone in the kitchen. Raquinio came into the living room and looked at the jewelry. He offered Gutierrez $250 for some rings, including a Kansas City Royals American League Championship ring, but Gutierrez wanted $500. Raquinio became angry and pulled out a pistol.
>
>     Gutierrez gathered up the jewelry and tried to leave, but Brenda shut the door as Raquinio hit Gutierrez on the head with a vase. Gutierrez fell and Raquinio pointed the gun at him. Gutierrez tried to take the gun from Raquinio and, as they struggled, the gun went off twice and Brenda was shot. Then Gutierrez passed out. When he regained consciousness, Brenda and Raquinio had left the room.
>
>     Gutierrez tried to flee through the back door but encountered Raquinio, who still had the gun, in the laundry room. Gutierrez tried to take the gun again, succeeding this time. The gun went off two more times as the two men fought. Raquinio continued to struggle, so Gutierrez hit him on the head with the gun in self-defense. Gutierrez then fled the house. He threw the gun away because he feared the police would shoot him if they saw him with it. In the street, people looked at him in a way he felt was accusatory. He hid in the shed because he was afraid. Then he lost consciousness again. He was in possession of the property stolen from Visalia because someone gave it to him to pay for methamphetamine.
>
>     The jury rejected Gutierrez's story and found him guilty of counts 1, 3, 4, 5, and 6. Following the court's instructions, it returned no verdict on count 2 because it was a lesser offense included in count 1. The jury also found true the firearm allegations for counts 1 and 6. The court found true two of the prior-prison-term allegations and the prior-strike allegation.

People v. Gutierrez, 2013 Cal. App. Unpub. LEXIS 114, 2-9 (Cal. App. Jan. 8, 2013).

### III.    Discussion

#### A.    Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  (Pet.)  In addition, the conviction challenged arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a).  Accordingly, this Court has jurisdiction over the instant action.

### B. Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by AEDPA provisions.

Under AEDPA, a person in custody under a judgment of a state court may only be granted a writ of habeas corpus for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams, 529 U.S. at 375 n. 7. Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

#### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that [are] materially indistinguishable from [a Supreme Court case] but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-06). "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied . . . The statute recognizes . . . that even a general standard may be applied in an unreasonable manner." Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under §

2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76 (quoting Williams, 529 U.S. at 409-10); Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011) (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) (quoted by Richter, 131 S. Ct. at 786).

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. "This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been

6

'adjudicated on the merits.'" Id.

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. (emphasis added). To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977)).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).

**IV. Review of Petition**

    **A. Claim 1 – Failure to Instruct on Self-Defense**

Petitioner contends the trial court violated his right to present a defense by failing to instruct the jury regarding self-defense with respect to the charge of being a felon in possession of a firearm.

        **1. State Court Decision**

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in subsequent petition for review by the California Supreme Court. (See Lodged Docs. 1-6.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05, 111 S. Ct. 2590, 115 L. Ed. 2d 706 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the Fifth District Court of Appeal explained:

> I. Self-defense instruction for being a felon in possession of a firearm
>
> Gutierrez argues that for count 4, possessing a firearm while a felon, the court was obligated to instruct the jury sua sponte on temporary possession for purposes of self-defense. The People argue that the instruction need not have been given because there was no substantial evidence to support it. The People also argue that any error was harmless.
>
> We need not decide whether it was error not to give the instruction.

8

Erroneous failure to give a jury instruction warrants reversal only if the failure is prejudicial. (People v. Breverman (1998) 19 Cal.4th 142, 178.) This general rule applies to an erroneous failure to instruct on an affirmative defense. (People v. Demetrulias (2006) 39 Cal.4th 1, 23.) The California Supreme Court has applied the beyond-a-reasonable-doubt standard of harmless error review to this type of error (ibid.), but has suggested that the less-stringent reasonable-probability test might be appropriate instead (People v. Salas (2006) 37 Cal.4th 967, 984).[fn4] For two reasons, we agree with the People that any error in failing to give a self-defense instruction for count 4 was harmless under any standard.

**FN4**: Gutierrez cites a California Center for Judicial Education and Research publication for the proposition that a court's erroneous refusal to give a self-defense instruction is reversible *per se*. The publication relies on People v. Lemus (1988) 203 Cal.App.3d 470, 478, which stated that this type of error is not subject to harmless-error review unless the factual question posed by the omitted instruction was resolved against the defendant under another instruction. Gutierrez cites no authority for the view that the mere erroneous omission of a self-defense instruction is reversible *per se*. In the absence of any authority, we will not accept that view, as it is inconsistent with the California Supreme Court's general stance on harmless error, i.e., that trial court error is reversible only when it results in a miscarriage of justice.

First, the jury found Gutierrez guilty of the attempted murder of Brenda. This means the jury believed Gutierrez shot Brenda with malice aforethought. To be not guilty of being a felon in possession of a firearm under a theory of self-defense, a felon must be in "temporary possession of [the] weapon for a period no longer than that in which the necessity ... to use it in self-defense continues ...." (People v. King (1978) 22 Cal.3d 12, 24.) If the period during which Gutierrez possessed the gun included the time when he tried to murder Brenda with it, then it is exceedingly unlikely that the period was limited to a time when he needed the gun for self-defense. Since the jury believed Gutierrez committed attempted murder with the gun, there is virtually no chance that, if instructed on the issue, it would have found that the prosecution failed to prove he possessed it for a longer time than he needed it for self-defense, assuming it would have found he ever needed it for self-defense at all.

Second, the jury found Gutierrez guilty of assaulting Raquinio with the gun. Again, it is extremely difficult to see how he could have committed this offense if he was in possession of the gun only for as long as he needed it for self-defense.

In sum, it is obvious that the jury accepted the prosecution's account in which Gutierrez was the aggressor and rejected the defense account in which Raquinio and Brenda were the aggressors. In light of this, we are confident, beyond a reasonable doubt, that if the court had given the instruction at issue, the jury would still have found Gutierrez guilty of being a felon in possession of a firearm.

People v. Gutierrez, 2013 Cal. App. Unpub. LEXIS 114 at 9-12.

### 3. Analysis

To the extent Petitioner alleges the instructional claim violated state law, his claim

is not cognizable in this proceeding. The Supreme Court has held that a challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings. Estelle v. McGuire, 502 U.S. at 71-72. A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3). Accordingly, to the extent that Petitioner raises state law claims, his claims should be dismissed.

The only basis for federal collateral relief for instructional error is that an infirm instruction or the lack of instruction by itself so infected the entire trial that the resulting conviction violates due process. Estelle v. McGuire, 502 U.S. at 71-72; Cupp v. Naughten, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); see Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (it must be established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment). The Court in Estelle emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. 502 U.S. at 72-73.

However, when habeas is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound and evidence in the case makes it applicable. Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006); see Mathews v. United States, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment, and the defendant requests such an instruction).

Petitioner contends that the trial court should have instructed the jury with regard

to self-defense as to the charge of felon in possession of a firearm. Petitioner argues that the state court's determination was unreasonable. The state court concluded that it was unlikely that the jury would find that Petitioner possessed the firearm in self-defense when it found that he used the same firearm to attempt to murder Brenda Cadiz and to assault Raquinio. Petitioner, on the other hand, argues that it would not be conflicting for the jury to find that he committed attempted murder and assault with the firearm, but was not guilty of possessing due to self-defense.

The state Court has the better argument. Having found that Petitioner committed attempted murder and assault with the firearm, it is unlikely that the jury would have found Petitioner not guilty of possessing the firearm based on self-defense. Petitioner presents no coherent theory as to why a jury would determine that he was not guilty of possessing the gun based on self-defense when they did not believe that he acted in self-defense with regard to the attempted murder and assault when using the same firearm. The jury was instructed on self-defense as to the attempted murder and assault charges, and nonetheless found Petitioner guilty of those charges. (See Rep. Tr. Vol. IV at 648, 654.) While Petitioner testified that he acted in self-defense, Brenda Cadiz testified at trial that Petitioner pulled the gun from his pocket and shot her without provocation. (Rep. Tr. Vol. II, at 265-267.) Raquinio also testified that after running out of bullets, Petitioner hit him in the head with the butt of the gun. (Rep. Tr. Vol. II at 123-24.) Based on the corroborating evidence of the two victims, it was unlikely that a jury would believe that Petitioner acted in self-defense while possessing the firearm. The failure to provide the self-defense instruction, even though applicable to Petitioner's defense, was harmless. Petitioner has failed to show that the instructional error had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht v. Abrahamson, 507 U.S. at. 637.

Accordingly, it is recommended that the Court deny Petitioner's claim concerning the failure of the state court to instruct on self-defense with respect to the felon in possession of a firearm charge.

### B. Claim Two: Ineffective Assistance of Counsel

Petitioner, in his second claim, contends that his counsel was ineffective for failing to present certain arguments and experts to show that Petitioner acted in self-defense.

#### 1. State Court Decision

Petitioner presented this claim by way of a petition with the Kern County Superior Court. The claim was denied in a reasoned decision by the Superior Court and summarily denied in subsequent petitions by the Court of Appeal and the California Supreme Court. (See Lodged Docs. 7-12.) Because the California Supreme Court and Court of Appeal opinions are summary in nature, this Court "looks through" those decision and presumes they adopted the reasoning of the Superior Court, the last state court to have issued a reasoned opinion. See Ylst, 501 U.S. at 804-05.

With regard to the ineffective assistance of counsel claim, the Superior Court held in its opinion:

> To prevail in a claim of ineffective assistance of counsel, petitioner must demonstrate that counsel's conduct fell below professional norms causing prejudice, which in its absence would create a probability of a change in the outcome. Strickland v. Washington (1984) 466 U.S. 668, 694.
>
> Petitioner cannot demonstrate ineffective assistance of counsel for the following reasons. First, the jury rejected petitioner's claim of self-defense. The facts clearly show that petitioner was the aggressor, and his use of methamphetamine does not absolve him of the attempted murder of Brenda Cadiz or assault with a firearm on Raquinio.
>
> Petitioner's injuries resulted from Raquinio defending himself as well as Brenda Cadiz. Petitioner continued shooting despite Raquinio retreating to the laundry room. Petitioner's anger about his inability to speak with Melecio Cadiz was most likely fueled by being under the influence of methamphetamine. This explains his forcibly reopening the door prior to shooting at Cadiz and Raquinio.
>
> The appellate court rejected petitioner's argument of erroneous jury instructions over self-defense, and consequently agreed with the jury that petitioner's version of events lacked credibility. The only tactic was to portray Ms. Cadiz' shooting as accidental; as a product of a struggle between Raquinio and himself. Petitioner could not overcome the evidence that he used a firearm; that the shell casings found near the house matched the firearm; that the trail of blood matched his where he was found near the shed; that Brenda Cadiz, despite her wounds, was able to summon help and gave a consistent rendering of events to police officers; and that the shoe prints matched those of petitioner's within the

premises.

Second, the decision to call witnesses is a tactical one by counsel, which the court will not second guess. People v. Beagle (1972) 6 Cal. 3d 441, 458. Generally, failure to investigate meritorious defenses or call favorable witnesses constitutes ineffective assistance of counsel. People v. Jackson (1980) 28 Cal.3d 264, 289, In re Alcox (2006) 137 Cal. App. 4th 655, 666, 657.

The court discussed why a claim of self-defense is unavailing above. Counsel consequently need not investigate non-meritorious defense. People v. Geddes (1991) 1 Cal. App. 4th 448, 454. Petitioner contends that he wanted counsel to call experts who petitioner claims would testify that the ballistics tests were inconclusive that petitioner shot the gun. Petitioner fails to provide any declarations by experts which would vouch for petitioner's theory of events. Petitioner cannot have it both ways.

He cannot claim self-defense and then say in the same vein that it was not he who fired the shots at Cadiz and Raquinio. The lack of expert witness' declarations renders petitioner's argument conclusory. People v. Duvall (1995) 9 Cal.4th 464, 474.

Petitioner is entitled to adequate not perfect counsel. People v. Jackson (2009) 45 Cal.4th 662, People v. Smith (1992) 6 Cal.4th 684, 696.

The facts and the law do not favor petitioner, and his claim of self-defense is fanciful at best, a claim which the jury rightly rejected. Counsel did his best under extremely difficult circumstances.

Since the court finds no ineffective assistance of counsel, it declines to issue an order to show cause. Petitioner's motion for appointment of counsel is denied. People v. Gonzalez (1990) 51 Cal.3d 1179, 1258, 1291. Petitioner fails to satisfy his burden to show prima facie case for habeas corpus relief. People v. Romero (1994) 8 Cal.4th 728, 737.

On the basis of the foregoing, the petition for writ of habeas corpus is accordingly
denied.

(Lodged Doc. 8.)

### 2. Legal Standard

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998). In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the Court must consider two factors. Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); Lowry

v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances.  Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. at 687; see also, Harrington v. Richter, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different." Strickland, 466 U.S. at 694.  Petitioner must show that counsel's errors were "so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687.  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail.  However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance.  Id. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25 (1984).

As the Supreme Court reaffirmed in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:

14

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. at 785-86.

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 3. Analysis

Petitioner contends that counsel was ineffective by failing (1) to present a gunshot residue report, (2) that counsel was ineffective for failing to obtain phone records to show

that Petitioner had an ongoing illicit business relationship with Brenda Cadiz, and (3) for failing to present a ballistics experts

### a. Gunshot Residue Report

Petitioner was tested for gunshot residue. The report indicated that the presence of three metal particles – lead, barium and antimony -- was indicative of gunshot residue. Petitioner was found to test positive to all three metal particles on his left hand. The testing on his right hand indicated some, but not all, of the metal particles. Accordingly, the report found that Petitioner had gunshot residue on his left hand, but was inconclusive with regard to Petitioner's right hand. (Pet. at 46-47.) Petitioner contends that defense counsel should have presented the report as it would show that Petitioner was not the one that shot the gun because he was right-handed and the test only indicated gunshot residue on Petitioner's left hand.

Petitioner believes that the gunshot residue would have aided his defense by showing that there was not gunshot residue on the hand that he most likely would have used to shoot the gun. However, it was reasonable for defense counsel not to use the report. First, the report was inconclusive as to whether there was gunshot residue on Petitioner's right hand, and did not rule out the possibility that Petitioner shot the gun. Further, and more damaging to Petitioner, was the fact that the report would have indicated that there was gunshot residue on his person, and therefore would provide support that the gun was close to or in his hands at the time of the shooting. This evidence could have corroborated his testimony that there was a struggle over the gun when it discharged, but it also could support the prosecution's theory that Petitioner alone shot at Cadiz.

The state court was not unreasonable in denying the claim. After describing the strong evidence based on the testimony of the victims and the physical evidence found at the scene, the state court found that Petitioner's claim of self-defense was "fanciful at best." The state court held that the evidence Petitioner desired to call would not have provided additional support to his theory of events. The state court's decision was

reasonable. Petitioner's arguments are conclusory and his defense, in light of the evidence presented is not credible.

Petitioner has not shown that counsel's conduct fell below an objective standard of reasonableness, or that he was prejudiced by counsel's conduct. The jury was presented with evidence and argument of the alibi, but in finding Petitioner guilty, must not have found the alibi defense credible.

The arguments or theories that could have supported the state court's decision rejecting Petitioner's claim of ineffective assistance of counsel are not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

### b. Failure to Subpoena Phone Records

Petitioner next asserts that counsel was ineffective for failing to subpoena phone records from Brenda Cadiz to show that they had previously spoken. Petitioner asserts that this would have corroborated his defense that he had a standing business relationship with Cadiz in which he would sell her stolen goods, and that the shooting occurred when Raquinio pulled the gun on Petitioner in an attempt to steal his stolen goods.

The phone records, assuming they indicated that Petitioner and Cadiz had phoned each other, would support Petitioner's claim that Cadiz and Petitioner had some prior dealings. However, records from trial already indicated that Petitioner was known by the victims. Raquinio testified that he had previously seen Petitioner when he had done some repair work on another house owned by the Cadiz family. (Rep. Tr. Vol. II at 116-17.) Even if there were prior phone conversations between Petitioner and Cadiz, the phone record would not indicate what was said. The evidence would not counteract the testimony of both Cadiz and Raquinio who testified to a version of the shooting in which Petitioner possessed the gun and was the aggressor. Despite lacking the phone records, Petitioner was able to testify to his version of events at trial. In determining that Petitioner

was not prejudiced by the failure to present evidence, the state court found that Petitioner's self-defense theory was "fanciful," and rightfully rejected by the jury. (Lodged Doc. 8.) Upon review, this Court also finds that the phone records only tangentially supported Plaintiff's version of the shooting, and counsel was reasonable in not presenting them at trial. Petitioner has not shown that he was prejudiced by the failure to present phone records and the state court's decision rejecting Petitioner's claim of ineffective assistance of counsel was not "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87. Petitioner is not entitled to federal habeas relief.

### c. Ballistics Expert

Petitioner claims that had counsel retained and presented a ballistics expert, it would have corroborated his self-defense theory or shown that the gun was not the one used to shoot Cadiz. It is possible that had counsel hired a ballistics expert, it could have confirmed Petitioner's version of events. However, it could have done the opposite, and provided further evidence that Petitioner was the shooter and that the gun was the one used in the shooting. In light of the testimony of the victims, and the physical evidence including the fact that Petitioner was likely in possession of the gun after the shooting and attempted to dispose of the gun on the roof of a nearby house, it was reasonable for counsel to believe that Petitioner's version of events did not likely occur. There was no plausible scenario presented that did not involve Petitioner or the gun found near Petitioner. Moreover, it was implausible that the jury would believe that Cadiz was accidentally shot while Petitioner and Raquinio struggled for the gun. Based on the evidence presented, and the failure of Petitioner to provide a credible version of events that would require a ballistics expert, counsel was reasonable in not to attempting to obtain a ballistics expert for trial.

The state court correctly found that Petitioner has not shown that counsel's conduct fell below an objective standard of reasonableness, or that he was prejudiced by

counsel's conduct. The state court's decision rejecting Petitioner's claim was reasonable. Richter, 131 S. Ct. at 786-87. Accordingly, Petitioner is not entitled to federal habeas relief with regard to his ineffective assistance of counsel claims.

**V.   Recommendation**

Accordingly, it is hereby recommended that the petition for a writ of habeas corpus be DENIED with prejudice.

This Findings and Recommendation is submitted to the assigned District Judge, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with the Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   December 7, 2016              /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE

19